**FILED**
**Dec 05, 2025**
**10:32 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Michael Vanderford, deceased, by Sabrina Vanderford, guardian of minor dependents | Docket No. 2023-02-6806 |
| | State File No. 73842-2023 |
| v. | |
| E.S. Dockery Company, et al. | |
| Appeal from the Court of Workers' Compensation Claims Brian K. Addington, Judge | Heard October 23, 2025 via Microsoft Teams |

---

### Affirmed and Certified as Final

---

In this compensation appeal, the employer asserts the trial court erred in concluding that the decedent's death was caused primarily by a work-related heart attack given evidence of his significant preexisting heart disease. Following a compensation hearing, the court considered the conflicting testimony of two medical experts and concluded that Ms. Vanderford's expert's opinion should be afforded greater weight, thereby resulting in the award of death benefits. The court also determined that, in addition to the decedent's biological son, his former stepdaughter is a dependent eligible to receive death benefits. The employer has appealed. Upon careful review of the record and the arguments of counsel, we affirm the trial court's compensation order and certify it as final.

Judge Pele I. Godkin delivered the opinion of the Appeals Board in which Presiding Judge Timothy W. Conner and Judge Meredith B. Weaver joined.

Jeffrey G. Foster, Nashville, Tennessee, for the employer-appellant, E.S. Dockery Company

Brad C. Burnette, Clinton, Tennessee, for the appellee, Ms. Vanderford, as guardian of minor dependents

## Factual and Procedural Background

Michael Scott Vanderford ("Decedent") worked as a professional flooring installer on various projects for E.S. Dockery Company ("Employer") for approximately twenty years.[1] On August 25, 2023, Decedent was working on a flooring job at a church when he suffered a fatal heart attack. Two additional workers were nearby at that time building a sound booth for the sanctuary. These workers reported that Decedent had been manually scraping carpet adhesive off the floor of a stage earlier that morning before sweeping up the debris. The church had surveillance cameras that captured some of the relevant events, and review of the footage showed that at 9:29 a.m., Decedent was sweeping the stage floor when he sat down on the corner of the stage and shook his head. Decedent stood up and immediately fell to the floor. He then got up and stumbled out to his van in the church parking lot, where he opened the door, sat in the driver's seat, and poured a bottle of water over his head before slumping over the steering wheel.

When this incident began, the other workers had gone outside to cut wood for the sound booth and witnessed Decedent leave the building and walk to his car. After noticing his distress, they approached the vehicle and, upon receiving no response from him, they called 9-1-1. Law enforcement and emergency medical services arrived soon thereafter. Attempts to revive Decedent were unsuccessful, and he passed away.

Later that day, Kevin Brown, a forensic investigator, contacted Decedent's former wife, Sabrina Vanderford, who had continued living with Decedent after their divorce, to obtain information about his health history and the days leading up to the incident in preparation for an autopsy.[2] According to Mr. Brown's August 28, 2025 report, Ms. Vanderford told him that Decedent did not take any regular medications and did not like seeking medical care. She stated the only recent medical procedure she could recall was the removal of a knot from his head the previous year. Based on his conversation with Ms. Vanderford, Mr. Brown documented that Decedent did not smoke cigarettes or drink alcohol, although he occasionally used marijuana. Mr. Brown also stated in his report that Decedent had complained of a severe headache, dizziness, and chest tightness the week prior to his death.[3]

---

[1] Although Decedent was classified as an independent contractor, the parties agreed an insurance premium was deducted from Decedent's pay to obtain workers' compensation coverage.

[2] Although Ms. Vanderford and Decedent were divorced, the record reflects that the sole purpose of the divorce was to allow Ms. Vanderford to file a bankruptcy petition without affecting Decedent's credit. After the divorce, Ms. Vanderford and Decedent continued to cohabitate in the same household with two minor dependents and held themselves out as husband and wife.

[3] At trial, Ms. Vanderford disputed some of the statements in Mr. Brown's report. She testified that she only told Mr. Brown about Decedent's headaches but did not suggest he had complained of dizziness or chest tightness. Mr. Brown also testified at trial regarding the contents of his report. In its order, the court determined that although Mr. Brown's investigative report had been filed without objection, the report was

Dr. Ellen Wallen performed the autopsy and noted the following diagnoses in her report:

I.      Atherosclerotic and hypertensive cardiovascular disease
      A. Atherosclerotic coronary artery disease, with maximal stenosis as follows:
         1. Left anterior descending coronary artery – 90%
         2. Left circumflex coronary artery – 20%
         3. Right coronary artery – Subtotal, near 100%
      B. Aortic atherosclerosis, mild
      C. Cardiomegaly (heart 640g; expected 405g)
      D. Myocardial scar, posterior
II.     Pulmonary congestion and edema (lungs 1950 g; expected 820 g)

Decedent's cause of death was determined to be atherosclerotic and hypertensive cardiovascular disease. Dr. Wallen's report noted that Decedent "had been installing carpet prior to indicating that he did not feel well, at which time he went outside, drank from a water bottle and sat in the driver['s] seat of his vehicle. He had been complaining of severe headaches, dizziness and chest tightness for the week prior." No evidence was presented during trial documenting any prior medical history concerning Decedent's heart or cardiac function. However, Dr. Wallen found indications during the autopsy that Decedent had suffered a prior heart attack at some point in the past. Dr. Wallen had no records suggesting Decedent had been taking any routine prescription medications prior to his death.

*Medical Proof*

Ms. Vanderford retained Dr. Arvindh Kanagasundram, a board-certified cardiologist and electrophysiologist, as her expert. According to his testimony, Dr. Kanagasundram spoke to Ms. Vanderford; reviewed the investigative report, the forensic examination report, videos of the incident, and depositions of witnesses; and consulted medical sources. He ultimately opined that the available information showed evidence of "preexisting cardiovascular disease," which made Decedent "more susceptible to a cardiac event triggered by physical exertion." He noted that Decedent had coronary artery disease, an enlarged heart, and evidence of a previous heart attack. Regarding the video of the incident, Dr. Kanagasundram testified that Decedent had been exerting himself and appeared short of breath. He noted that the video showed Decedent sitting down and appearing visibly uncomfortable. Dr. Kanagasundram stated that this is "important because really his baseline [–] or every patient, you know has their own baseline [–] and so this was a high level of exertion for him." He explained that Decedent's perspiring was

---

a business record and that all "witness-supplied" information in the report was inadmissible hearsay. Neither party has raised this issue on appeal; therefore, we need not address it.

also important because sweating results in the loss of and shifts in electrolytes, which can play a role in causing cardiac arrest.

Dr. Kanagasundram testified that, based on the lack of any prior medical treatment related to Decedent's cardiac function, he believed Decedent's condition was "stable" before the work incident. He then testified, to a reasonable degree of medical certainty, that Decedent's death was more than 50% caused by his work-related exertion on the morning of his death. He further explained that Decedent's work activities were more than 50% responsible for causing an aggravation of his preexisting heart condition, which led to his sudden cardiac death. Finally, Dr. Kanagasundram agreed that Decedent "would not have experienced cardiac arrest on the morning of August 25, 2023 if he had not been engaged in physically demanding activities."

Employer retained cardiologist Dr. Claro Diaz as its expert, who reviewed the same documentary information as Dr. Kanagasundram, although he did not speak with Ms. Vanderford. Dr. Diaz disagreed with Dr. Kanagasundram's testimony and concluded that Decedent's activities as seen in the video were not "vigorous." He testified that Decedent experienced ischemia-triggered arrhythmia that led to his death, but over 90% of the cause of Decedent's sudden cardiac death was his preexisting severe coronary artery disease. Dr. Diaz reasoned that, based on the severe blockages that were seen during the autopsy, Decedent must have experienced symptoms prior to his death that he failed to recognize as cardiac symptoms, which ultimately led to his heart attack. Dr. Diaz testified that the ischemic arrhythmia that caused his death could have happened at any time while he was engaged in any activity, including sleeping or sitting on the couch, and was not primarily caused by work.

*Trial Testimony*

At trial, Ms. Vanderford testified that Decedent was in generally good health and was able to perform his normal tasks at home and at work before his death. She acknowledged that he suffered from headaches and did not go to work the day before his death. Although Decedent's supervisor testified at trial that Decedent called him the day before the incident stating that he could not work due to a headache and that he "didn't feel well," Ms. Vanderford testified Decedent missed work that day because she needed him to drive her to a medical appointment and to take the children to school. She testified that the night before the incident, Decedent ate pizza and watched a movie with the family with no complaints and had no trouble performing his normal activities. She denied Decedent reported any symptoms of dizziness or chest pain in the days before his death.

Ms. Vanderford further testified that Decedent's family unit consisted of herself, their biological son, and her daughter from another relationship ("Stepdaughter"). Ms. Vanderford testified they married in 2015 but decided to divorce in 2020 so she could file bankruptcy without impacting Decedent's credit. Following their divorce, which no one

4

in their extended families knew about, Decedent and Ms. Vanderford continued to live together with both children and continued to hold themselves out as husband and wife. Stepdaughter referred to Decedent as her father, and Decedent paid all the bills, shopped for groceries, cooked meals, and supported himself, Ms. Vanderford, and the two children.[4] Ms. Vanderford asserted that both children are dependents who are entitled to benefits under Tennessee's Workers' Compensation Law. In contrast, Employer argued that Decedent's death was not compensable and that, even if benefits are owed, Stepdaughter was not a dependent entitled to benefits.

Ms. Vanderford and Employer each relied on *Mitchell v. Bunge North America*, No. 2016-08-1131, 2019 TN Wrk. Comp. App. Bd. LEXIS 15 (Tenn. Workers' Comp. App. Bd. Apr. 16, 2019) as the proper framework to analyze compensability issues. In *Mitchell*, the surviving spouse's claim was denied because she failed to prove her husband's fatal heart attack arose primarily out of his employment. *Id.* at *26. In its compensation order finding Decedent's heart attack compensable, the court noted that the present case is distinguishable from *Mitchell* because, although the surviving spouse in *Mitchell* contended her husband died from physical exertion, the proof showed that he died after sitting and talking with his coworkers, and there was no evidence of any level of exertion prior to his death. *Id.* at *19. *Mitchell* also established that work-related exertion need not be unusual or extraordinary to form the basis of recovery for a work-related heart attack and that an employee's preexisting coronary condition did not necessarily preclude recovery. *Id.* at *16-17.

In its compensation order, the court emphasized that sweeping a floor has been found to be a sufficiently vigorous activity to support the compensability of a fatal heart attack, citing *Howard v. Sterling Plumbing Grp., Inc.*, No. W1998-00338-WC-R3-CV, 1999 Tenn. LEXIS 660 (Tenn. Workers' Comp. Panel Dec. 1, 1999) (in which the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel concluded the fatal heart attack was the result of the exertion of sweeping the employer's premises superimposed on the decedent's preexisting coronary artery disease). The court then considered the expert medical opinions and, after weighing the physicians' credentials, information considered, and explanations of the differing opinions, found that Dr. Kanagasundram's opinion was entitled to greater weight. The court further found Ms. Vanderford credible and accepted her testimony that Decedent had a "normal" day prior to the day of the heart attack and that there was insufficient evidence that Decedent was suffering from dizziness, shortness of breath, or chest discomfort in the days prior to the heart attack. After reviewing the video, the court noted Decedent's obvious signs of distress after sweeping the stage. It concluded that although Decedent had preexisting coronary artery disease, he began to experience new and/or increased symptoms following

---

[4] Both minor dependents also testified at trial, and Stepdaughter testified she believed Decedent was her biological father until she learned otherwise after his death.

his exertion at work, and his death resulted from a heart attack that arose primarily out of his work activities.

The parties agreed that, if compensable, Decedent's son was a dependent child entitled to benefits. However, Employer argued that Stepdaughter should not be entitled to survivor's benefits. Citing *Atkins v. Employer's Mut. Ins. Co.*, 347 S.W.2d 49, 50 (Tenn. 1961), the court noted that, even if unrelated, children in an employee's household who are actually dependent on the deceased employee are entitled to compensation. Ultimately, the court concluded that Stepdaughter was Decedent's actual dependent and is entitled to death benefits. Finally, the trial court awarded attorney's fees in a lump sum to Ms. Vanderford's counsel. Employer has appealed.

## Standard of Review

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2024). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2024).

## Analysis

Employer asserts that the trial court erred in finding: (1) that Decedent suffered a compensable work injury resulting in his death; (2) that both Decedent's son and Stepdaughter are entitled to death benefits; and (3) that Ms. Vanderford's attorney is entitled to a lump sum attorney's fee based on the maximum total benefit. Conversely, Ms. Vanderford asserts the trial court correctly found that Decedent's heart attack and resulting death arose primarily out of his employment. It also argues the court was correct in determining Stepdaughter is an actual dependent entitled to death benefits and that counsel is entitled to a lump sum award of attorney's fees.

*Expert Medical Opinions*

First, Employer asserts the trial court erred in giving greater weight to Dr. Kanagasundram's causation opinions than those expressed by Dr. Diaz. In considering conflicting expert medical opinions, a court may consider "the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by other experts." *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672 (Tenn. 1991). In addition, it is well-established that, when faced with competing expert medical opinions, "trial courts are granted broad discretion in choosing which opinion to accept, and we will not disturb that decision absent an abuse of discretion." *Jimenez v. Xclusive Staffing of Tenn., LLC*, No. 2016-06-2377, 2017 TN Wrk. Comp. App. Bd. LEXIS 45, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 7, 2017). However, we are also charged with reviewing documentary evidence de novo. *See, e.g., Brees v. Escape Day Spa & Salon*, No. 2014-06-0072, 2015 TN Wrk. Comp. App. Bd. LEXIS 5, at *16 (Tenn. Workers' Comp. App. Bd. Mar. 12, 2015). Moreover, when the trial court's determination is challenged on appeal, we must determine where the preponderance of the evidence lies. *See* Tenn. Code Ann. § 50-6-239(c)(7). Thus, in considering these various standards of review, we have previously concluded that, in circumstances where a trial court has weighed expert medical opinions contained in depositions, the trial court has discretion to accredit the expert opinion it believes offers the more probable explanation. We then consider whether the preponderance of the evidence as a whole, including lay testimony and other evidence, leads to the conclusion that the trial court abused its discretion. *See Moore v. Beacon Transport, LLC*, No. 2018-06-1503, 2021 TN Wrk. Comp. App. Bd. LEXIS 39, at *7 n.1 (Tenn. Workers' Comp. App. Bd. Oct. 29, 2021).

Here, we conclude the trial court did not err in accrediting the opinions of Dr. Kanagasundram over those of Dr. Diaz. In its brief on appeal, Employer argues that, unlike past cases involving heart attacks, Decedent's "preexisting heart condition was far from stable or dormant and was quite severe and untreated." In support of its position, Employer emphasizes testimony from Mr. Brown and his investigative report suggesting that Decedent was experiencing cardiac symptoms in the week prior to his death, as well as Dr. Wallen's findings regarding the near-total blocked right coronary artery, the 90 percent blockage in his left anterior descending artery, and a myocardial scar suggestive of a previous heart attack. Yet, both doctors considered this same information and came to different conclusions regarding causation. In comparing the expert opinions, the court properly considered the qualifications of both experts, the circumstances of their respective evaluations, and the information they relied upon in formulating their opinions before concluding that Dr. Kanagasundram better explained how Decedent's physical activities on the morning of his death triggered the physiological changes that caused his sudden cardiac death. In short, we cannot conclude the trial court abused its discretion in accepting Dr. Kanagasundram's causation opinion when we consider the preponderance of the evidence as a whole, including lay testimony and other evidence cited by the trial court.

*Identification of Decedent's Dependents*

Next, Employer asserts the trial court erred in identifying Stepdaughter as a dependent eligible for death benefits. We disagree. Ms. Vanderford provided unrefuted proof that Decedent was financially responsible for Stepdaughter and raised her as his own child. It is unrefuted that, even after the divorce, Stepdaughter remained in the couple's household as a member of the nuclear family and received full financial support from Decedent. Tennessee Code Annotated section 50-6-210 provides that children who are under sixteen years of age are considered "persons wholly dependent," and, as Ms. Vanderford correctly notes, the statute does not differentiate between biological children and non-biological children. Rather, the *actual* dependency of the child controls that child's entitlement to death benefits. *See, e.g.*, *Wilmoth v. Phoenix Util. Co.*, 75 S.W.2d 48 (Tenn. 1934) ("Relationship is not the test, but support and actual dependency of the child."). We agree with the trial court that Stepdaughter was Decedent's actual dependent and is entitled to death benefits.[5]

*Lump Sum Attorney's Fees*

Finally, Employer asserts in its brief that although the Tennessee Supreme Court "says that attorney's fees in death cases *may* be awarded in a lump sum, it does not mean that they should be awarded here." Employer argues that, if for some reason Decedent's dependents do not reach the age of eighteen or choose not to pursue a higher education until the age of twenty-two, counsel could recover a portion of death benefits that are never actually received by Decedent's dependents. Instead, Employer proposes that the court award 20% of the minor dependents' periodic payments of death benefits "until such time as [Decedent's] dependent's benefits cease, or the full $83,844.90 in fees is reached." In response to this argument, Ms. Vanderford correctly notes that this same argument was rejected by the Tennessee Supreme Court's Special Workers' Compensation Appeals Panel in *Summers v. RTR Transp. Servs*., No. M2022-00084-SC-R3-WC, 2022 Tenn. LEXIS 409 (Tenn. Workers' Comp. Panel Oct. 28, 2022), where the Panel noted that the Supreme Court favors a lump sum award of attorney's fees in most circumstances, and such fees may be paid in a lump sum even if death benefits are paid periodically and are conditional on future events. *Id.* at *12 (citing *Nat'l Pizza Co. v. Young,* 879 S.W.2d 817, 818 (Tenn. 1994)). Employer has presented no argument to establish that the Panel's holding in

---

[5] Rule 17.03 of the Tennessee Rules of Civil Procedure states that a court *shall* appoint a guardian ad litem in actions involving minors "if justice requires." (Emphasis added.) "[T]he phrase 'or whenever justice requires' . . . places the appointment of the guardian ad litem within the sound discretion of the trial judge and requires the trial judge to appoint [a] guardian ad litem" as justice dictates. *Gann v. Burton*, 511 S.W.2d 244, 246 (Tenn. 1974). Although nothing in the record indicates whether the parties or the court discussed whether a guardian ad litem was necessary in this case, counsel for Ms. Vanderford stated at oral argument that the court did inquire as to the necessity of appointing a guardian ad litem. Counsel further stated that he represented not only Ms. Vanderford, as guardian, but the dependent children themselves and, as such, appointment of a guardian ad litem was unnecessary at this time.

*Summers* is inapplicable here.  Thus, we find no error on the part of the trial court with respect to the award of attorney's fees in a lump sum.

## Conclusion

For the foregoing reasons, we affirm the trial court's order in all respects and certify it as final.  Costs on appeal are taxed to Employer.



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Michael Vanderford, deceased, by Sabrina Vanderford, guardian of minor dependents | Docket No. 2023-02-6806 |
| | State File No. 73842-2023 |
| v. | |
| E.S. Dockery Company, et al. | |
| Appeal from the Court of Workers' Compensation Claims Brian K. Addington, Judge | Heard October 23, 2025 via Microsoft Teams |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 5th day of December, 2025.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| Jeffrey G. Foster | | | | X | jfoster@morganakins.com plunny@morganakins.com |
| Brad C. Burnette | | | | X | brad@foxlawtn.com andrea@foxlawtn.com |
| Brian K. Addington, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov